STATE *v.* KELLEY.  { Aug. 11, 1876.

*Insanity of witness—Evidence.*

On the trial of àn indictment it was claimed by the respondent, and evidence was admitted tending to show, that the complainant, who was a witness for the State, was insane. *Held*, that it was error to exclude evidence of acts and conduct bearing upon his mental condition prior to the day of the alleged assault.

FROM Coös CIRCUIT COURT.

The respondents were indicted for making a riot, and for a riotous assault upon one William H. Potter, of Berlin, N. H., July 12, 1875. Plea, not guilty, and trial before STANLEY, J., and a jury. The complainant Potter was a witness for the state, and testified, among other things, in substance, that on the day aforesaid, about sunset, he was travelling along the highway, near the Berlin mills boarding-house, when a crowd of men came out of the store and boarding-house into the road ; that some one in the boarding-house called to him to go in ; that he did so, went up stairs, and sat down in one of the sleeping-rooms ; that seeing the respondents Sheridan, Brown, and Kelley coming up the stairs towards him, and being frightened, he jumped out of the chamber window, about fourteen feet from the ground, and ran down across the field into the highway ; that the crowd followed him, and shouted after him, calling him hard names ; that he recognized all the respondents in the crowd ; that stones were thrown at him by some of those in the crowd, one of which knocked his hat off ; that he escaped by leaving the highway and going into the woods, where he remained till after dark ; that after dark he started to go to Mr. Roscoe Mason's, where he boarded, by the highway aforesaid, leading past the Berlin mills boarding-house aforesaid, but that, in going through a piece of woods just before reaching said boarding-house, five or six men jumped out of the bushes yelling at him, and beat him upon the head so that he became senseless, and knew no more till some time in the night, when he remembered of lying on the ground near the bank of Androscoggin river ; that he remained conscious a short time, and then knew no more until he found himself early the next morning at Mr. Wilson's barn, nearly half a mile distant from the place of the alleged assault, and about the same distance from the place at the river bank where he remembered he was lying in the night-time, as before stated ; that among those who assaulted him he recognized the respondent Kelley by his voice ; that he was struck several severe blows upon the head ; that his shirt and one suspender were cut as if by a knife ; that he was sick and confined to his room about three weeks in consequence of the assault. The complainant also stated that he had had trouble with the respondent Dolloff a short time before the alleged riot and assault ;

that Dolloff had threatened to get up a crew and lug him out of town, and do other bodily harm to him; that the respondents Brown and Kelley were present at the time of those threats.

The respondents gave evidence tending to show that no riot occurred at the time and place alleged; that neither of them participated in any riot or any assault upon the said Potter, either at that time or afterwards. They also gave evidence tending to show that the complainant was not assaulted by anybody in the night-time, but that the insensible condition in which said Potter was found, and the injuries which he received, if any, were probably the result of his falling upon the ground in an attack of epilepsy, or an epileptic fit, to which it appeared he had for a long time been subject.

Dr. Wardwell, who saw the complainant at said Wilson's barn the next morning after the alleged riot and assault, and prescribed for him, was called as a witness by the respondents, and testified, among other things, that the complainant had been subject to epileptic fits, and he had treated him for that disorder in May, 1875; that he carefully examined the complainant's person the next morning after the alleged riot and assault, and found no signs of injury about him, except a very slight bruise on the side of his head, which might have been caused by his falling in a fit; that in his opinion the complainant was at the time suffering from an attack of epilepsy; that a person subject to that disease is liable to be affected more or less with insane delusions, and, when a fit is coming on, may run, jump, dance, sing, or do other queer things, and finally fall in a senseless condition, and may remain so for several hours; that he had observed the complainant's condition, and thought he was liable to odd freaks and fancies on account of said disorder.

As bearing on the question of the complainant's mental condition, and as affecting his credit before the jury, the respondents were allowed to put in evidence a letter conceded to have been written by the complainant, and sent to a sister of the respondent Dolloff the morning of the day of the alleged assault. And with the same view, the respondents also offered in evidence a complaint made by said Potter against the sister of the respondent Dolloff, on July 8, 1875, signed and sworn to by the complainant, charging her with attempting to take his life, sometime during the month of May preceding, by poisoning, and in connection therewith also offered to show that said Potter, at the time when he claimed the attempt to poison him was made, was suffering from an attack of epilepsy in a house half a mile or more distant from where the sister of said Dolloff was at work; and that she did not administer any poison to him during that time, or at any other time, or make any such attempt. But the court ruled out said evidence, and limited the respondents' evidence touching the mental condition of the complainant to the very day of said alleged riot and assault; to which the respondents excepted.

The counsel for the State were allowed to put in evidence to make out a *prima facie* case against the respondents, in their judgment, and

then to rest. The respondents' counsel claimed that the government should put in their whole case before resting, and that the evidence for the State in the close should be limited to what would be strictly rebutting testimony; but the court ruled otherwise, and after the respondents had testified, and their evidence was all in, allowed the State to put in evidence in chief, and not of a strictly rebutting character; to all which exception was taken.

The jury having found all the respondents guilty, they moved to set aside the verdict, and for a new trial by reason of alleged error in the foregoing rulings of the court.

*Ray, Drew & Jordan,* for the defendants.

The court allowed evidence to go to the jury touching the complainant's mental condition on July 12, 1875, the day of the alleged riot and assault, but ruled out all evidence of his mental condition on any other. day, before or afterwards. This was clearly wrong. Potter's unsoundness of mind was the product of a disease which had long existed. It arose from epilepsy. The case finds that Potter had been subject to that disease for a long time; that Dr. Wardwell had treated him for it as early as May, 1875; and that, upon a careful examination of the complainant's person the next morning after the alleged affray, he found no signs of injury from an assault, but discovered that he was then suffering from an attack of epilepsy. It appeared on trial that a person subject to that disorder is affected with insane delusions, odd freaks and fancies, and is liable to do all manner of strange things.

"A lunatic is a person who enjoys intervals of sound mind, and may be admitted as a witness during a lucid interval. He must of course have been in the possession of his intellect at the time of the event to which he testifies, as well as at the time of his examination, and it has been justly observed, that it ought to appear that no serious fit of insanity has intervened so as to cloud his recollection and cause him to mistake the illusions of his imagination for the events he has witnessed." Roscoe's Cr. Ev. 127.

"It makes no difference from what cause the defect of understanding may have arisen; nor whether it be temporary and curable, or permanent; whether the party be hopelessly an idiot or maniac, or only insane as a lunatic, or be intoxicated; or whether the defect arises from mere immaturity of intellect, as in the case of children. While the deficiency of understanding exists, be the cause of what nature soever, the person is not admissible to be sworn as a witness." 1 Gr. Ev., sec. 365.

In this case, it was a question for the jury whether Potter's memory was so far impaired as to render his testimony worthless or not. *Regina* v. *Hill,* 2 Bennett & H. Lead. Crim. Cases 204; *Hill* v. *Nash,* 41 Me. 585. And any evidence of the acts, conduct, or declarations of Potter, either before or after the time of the alleged affray, tending to show an insane mental condition, was clearly admissible. *U. S.* v.

*Holmes,* 1 Clif. (U. S.) C. C. R. 98–130; *Lake* v. *The People,* 1 Park. (N. Y.) C. C. 556; *Peaslee* v. *Robbins,* 3 Met. 164; *Dickinson* v. *Barber,* 9 Mass. 225; *Grant* v. *Thompson,* 4 Conn. 208; *State* v. *Hays,* 22 La. Ann. 39;—see, also, the remarks of LADD, J., in *State* v. *Jones,* 50 N. H. 369–382, where he says " that evidence, tending to show the defendant's mental and moral character and condition for a period of many years before the act, was properly received."

It makes no difference whether the question of insanity is raised against a witness whose testimony is offered, or in behalf of a respondent charged with crime. The methods of proof are the same in both cases.

The evidence rejected did not tend to raise a collateral issue. The issue was, whether Potter was in an insane condition, July 12, 1875. Proof that he was in an insane condition four days earlier,—in other words, proof that he talked, acted, and appeared like an insane man, July 8, 1875,—was just as competent to rebut the legal presumption of Potter's sanity, July 12, 1875, and to establish the fact of his insanity at the last named date, as the proof which the court admitted. The reason of this is, because insanity, delusion, lunacy, and the like, are continuing disorders. When once shown to exist, the presumption is that they remain, or continue, the same as sanity is presumed to exist and continue, in the absence of proof to the contrary. The rejected evidence tended to show that Potter's story about being poisoned was not only untrue and impossible from the situation of the parties, but also that he was at that very time suffering from another attack of the same disorder he had on July 12, afterwards.

As to effect of epileptic fits, see Dr. Raue's work on Pathology and Therapeutics, page 25 ; Dr. Blandford on Insanity and its Treatment, pages 90, 91 ; Dr. Flint's Principles and Practice of Medicine, pages 606, 619 ; Ray's Med. Jur. of Insanity, ch. 8.

*H. Heywood, solicitor,* for the State.

1. On the trial of this case by the jury, the respondents' counsel sought to prove that Potter, the complainant, and a witness for the State, was acting under an insane delusion as to what was done to him at the time of the alleged riotous assault. To prove this, the court allowed the defence to prove that Potter was subject to epileptic fits, and also to prove by an expert that a person subject to this disease is likely to have insane delusions. They were also allowed to read a letter written by Potter, which tends to prove that he was illiterate and foolish, or, it may be, insane, when he wrote it. But all of this did not prevent a verdict against the respondents. It seems that there was still evidence enough to prove that they were guilty of a riotous assault. They believed that a man subject to all the disabilities named, and who wrote a foolish letter, might still be abused, and that the respondents were guilty of the abuse.

The evidence excluded was, that on July 8, 1875, four days before

the riotous assault, the witness Potter made a complaint against Miss Dolloff, in which he charged her with an attempt to poison him, and that the complaint was not true.

The counsel for the defence proposed to go outside of the issue in this case, and try the issue as to whether or not the complaint was true.    It is said that this was offered to show his " mental condition, and as affecting his credit before the jury."    Undoubtedly, if this had been admitted, and Miss Dolloff had testified that she did not attempt to poison Potter, the counsel would have contended that he was discredited as a witness, because he had sworn falsely in making oath to the complaint.    But who ever heard of impeaching a witness in that way ?

Evidence was received tending to prove that Potter was suffering from an attack of epilepsy when the riotous assault was claimed to have been made, and that this was likely to cause a delusion.    But no offer was made to show that he was suffering in the same way when he made the complaint; so that it was not proposed to prove that on July 8 he had a malady that was likely to cause a delusion, and that on that account he made a false charge against Miss Dolloff, and that from this it might be inferred that from the same cause he made a false charge against the respondents.    But the offer was, to prove that he made a false charge against Miss Dolloff.    From this it would be inferred, that if he made a false charge in that case, he did in this case, or that he was then under a delusion and made a false charge, and that on this trial he was under a delusion and made a false charge. Such proof as this does not legally prove anything for the defence.

In *State* v. *Knapp,* 45 N. H. 143, it was decided that on the trial of the respondent for a rape, it was not evidence on his behalf to prove that the complainant was unchaste with other men.

The question as to whether Potter made an unfounded charge against Miss Dolloff is a collateral issue.

Again: the legitimate inquiry as to Potter's mental condition had reference to July 12 only.    If it had been claimed that he was permanently insane, it might be relevant to inquire into his condition an indefinite time before or after that time.    But the claim was, that he was subject to sudden attacks of epilepsy, which rendered him for the time insane, or caused delusion.    The court, then, did right to confine the evidence, as to this point, to that day, and it was a matter of discretion that they might do so.    *State* v. *Knapp,* above cited.

LADD, J.    Upon the inquiry as to the condition of Potter's mind, whether diseased or not, I think the evidence could not legally be confined to the day of the alleged assault.    Evidence of his conduct on other occasions, before that time, tending to show the existence of delusions or other usual symptoms of mental disease, was clearly admissible.    The only question is, whether making a false complaint that some person had attempted to poison him was relevant to that inquiry; and I think it was.    It is understood to be a very common delusion, and so a very

common symptom of mental disease, for the patient to be possessed with a false belief, out of which he cannot be reasoned, that some person (oftentimes his best friend) entertains murderous designs against him, and that his life is in peril from their acts. I am of opinion the evidence should have been received, and that the verdict must be set aside.

CUSHING, C. J. Ordinarily, a person proved to have been insane at any time is presumed to remain so until the contrary is proved, though this is not always so. If this is held to be the law, there could be no doubt of the propriety of proving the witness's insane delusion before the time in question ; but if it were not so, and if such was not held to be the presumption, still I think evidence of the witness's insane delusion at a time prior to the period in question would have some tendency to prove his insanity at that time, and the evidence, therefore, should have been admitted.

SMITH, J. The evidence rejected tended to show that Potter was subject to insane delusions, and therefore was competent evidence as to his mental condition before and at the time of the assault charged in the indictment. *State* v. *Jones,* 50 N. H. 309. It was within the discretion of the presiding judge to receive further evidence from the State, in rebuttal of that introduced by the respondents, although the same under the fiftieth rule of court now in force would be excluded. No rule at that time forbade the course that was pursued.

*Verdict set aside.*